**Quarles & Brady LLP**
Firm State Bar No. 00443100
Renaissance One
Two North Central Avenue
Phoenix, AZ  85004-2391
TELEPHONE 602.229.5200

Eric B. Johnson (#020512)
eric.johnson@quarles.com
Lukas M. Landolt (#034759)
lukas.landolt@quarles.com

*Attorneys for Defendants Tyco Fire Products, LP & Chemguard, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DeAnza Domestic Water Improvement District of Pima County, Arizona,<br><br>                    Plaintiff,<br><br>          v.<br><br>The 3M Company, f/k/a Minnesota Mining and Manufacturing Co.; Tyco Fire Products L.P.; Chemguard, Inc.; Buckeye Fire Equipment Company; National Foam, Inc.; E.I. Du Pont De Nemours And Company, individually and as successor in interest to DuPont Chemical Solutions Enterprise; The Chemours Company, individually and as successor in interest to DuPont Chemical Solutions Enterprise; The Chemours Company FC, L.L.C., individually and as successor in interest to DuPont Chemical Solutions Enterprise; Dynax Corporation; Corteva Inc.; and Du Pont De Nemours Inc., f/k/a DowDuPont, Inc.,<br><br>                    Defendants. | NO. _____<br><br>(Formerly Pima County Superior Court Case No. C20203734)<br><br>**DEFENDANTS TYCO FIRE PRODUCTS, LP AND CHEMGUARD, INC.'S NOTICE OF REMOVAL** |

## NOTICE OF REMOVAL

Defendants Tyco Fire Products LP ("Tyco") and Chemguard, Inc. ("Chemguard"), by and through undersigned counsel, hereby give notice of removal of this action, pursuant to 28 U.S.C. §§ 1332, 1442(a)(1), and 1446, from the Superior Court of the State of Arizona, County of Pima to the United States District Court for the District of Arizona. As grounds for removal, Tyco and Chemguard state as follows:

## PRELIMINARY STATEMENT

1. Plaintiff seek to hold Tyco, Chemguard, and certain other Defendants liable based in part on their alleged conduct in designing, manufacturing, and selling firefighting chemical agents, aqueous film-forming foam ("AFFF"), which were developed for sale to the United States military and others in accordance with the military's rigorous specifications. Plaintiff alleges that these AFFF products were used at Davis-Monthan Air Force Base ("DMAFB"), causing contamination of Plaintiff's water supply wells. Accordingly, Tyco and Chemguard intend to assert the federal "government contractor" defense in response to Plaintiff's claims. Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), Tyco and Chemguard are entitled to remove this action in order to have their federal defense adjudicated in a federal forum. Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008). In the alternative, this action is removable to federal court based on diversity jurisdiction under 28 U.S.C. § 1332.

## BACKGROUND

2. This action was filed on September 2, 2020, in the Superior Court of Pima County, Arizona, bearing Case No. C20203734. Accurate and complete copies of all documents filed in the state court action are attached hereto as **Exhibit A**, along with a

Verification that they are true and correct copies.[1]  Tyco was served with the Summons and Complaint on September 25, 2020 (Ex. A).  Accordingly, this Notice of Removal is timely filed under 28 U.S.C. § 1446(b).

3. Venue for the removal of this action is proper in this Court pursuant to 28 U.S.C. §§ 82 and 1442(a) because the Superior Court of Pima County, Arizona, is located within the District of Arizona.

4. Tyco and Chemguard are not required to notify or obtain the consent of any other Defendant in this action to remove this action as a whole under § 1442(a)(1).  *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Linden v. Chase Manhattan Corp.*, 1999 WL 518836, at *1 (S.D.N.Y. July 21, 1999); *Torres v. CBS News*, 854 F. Supp. 245, 246 n.2 (S.D.N.Y. 1994).  Nor are they required to notify or obtain the consent of any other Defendant in this action to remove this action under 28 U.S.C. § 1332, as diversity jurisdiction is not the sole basis for removal of this action.  *See* 28 U.S.C. § 1446(b)(2)(A).

5. Plaintiff is a water improvement district that was "formed in 2018 to construct, operate, and maintain a domestic water system to provide drinking water in Pima County, Arizona."  (Compl. ¶¶ 17–18).  Plaintiff asserts that it owns a well, which it identifies as "well #55-604845," and that it is also the assignee of "well / water rights and the claims described in [the] Complaint held by I-10 Avra Valley Mining & Development, LLC, Steward Title & Trust, Trust 0316, LLJ Holdings, LLLP, N.N.K., L.L.C., and Lewis Holdings, LLC."  (*Id.* ¶¶ 19–20).  Plaintiff further asserts that it "holds an assignment of those certain Claims and Choses-in-Action previously held by I-10 Avra Mining &

---

[1] Beyond Plaintiff's initial filing of the Complaint, civil coversheet, individual summonses for each of the defendants, and Plaintiff's FASTAR Certificate on September 2, 2020, there have been no further proceedings in this action in the Superior Court of the State of Arizona, County of Pima.

Development, LLC, an owner of property within DeAnza's District relating to water rights received by deed and also arising under ownership of well #55606088 Arizona Department of Water Resources and rights attendant thereto." (*Id.* ¶ 20).

6. Plaintiff generally alleges that Defendants, including Tyco and Chemguard, manufactured, marketed, and sold firefighting aqueous film-forming foam ("AFFF") that contained perfluorinated chemicals ("PFCs"), including perfluorooctane sulfonate ("PFOS") and/or perfluorooctanoic acid ("PFOA"). (*See, e.g., id.* ¶¶ 2–3, 14.) Plaintiff alleges that these AFFF products were used at DMAFB during "routine training and emergency activities, allowing PFOS/PFOA to travel to the surrounding groundwater, causing contamination of various of DeAnza's water supply wells, in various locations, in varying amounts, at various times." (*Id.* ¶ 9). Plaintiff further alleges that "additional releases of AFFF have occurred at the DMAFB through testing of the equipment, false alarms, equipment malfunctions, and other incidental releases in the hangers [sic], fire stations and other locations," (*id.* ¶ 10), and that "[o]nce Defendants' AFFF was released to the environment, whether on the ground, into the air, or through a wastewater treatment system, the PFOS/PFOA contaminated DeAnza's water supply" (*id.* ¶ 11). Plaintiff also asserts that "Defendants' AFFF products containing PFCs, including but not limited to PFOA and PFOS have been used for decades in Tucson, Arizona at civilian airports and other facilities, near the DeAnza wells." (*Id.* ¶ 117).

7. Plaintiff seeks "damages incurred and to be incurred for the investigation, monitoring, remediation, treatment and other necessary responses to the PFOA/PFOS water contamination, to stem the threat to public health and the environment caused by Defendants' AFFF products, and to ensure that the cost of the water treatment be borne by those responsible, not DeAnza." (*Id.* ¶ 16). Plaintiff asserts that it "will incur substantial expenses in treating the contaminated water and installing the infrastructure modifications necessary to ensure each residential and commercial property is served clean and safe

water," and that it "will also incur future sampling costs for PFOS and PFOA and other PFCs for the next one hundred (100) years." (*Id.* ¶¶ 28–29).

8.  Plaintiff alleges, among other things, that Defendants' AFFF products were defective and unreasonably dangerous (*id.* ¶ 134), and asserts claims against Defendants including Tyco and Chemguard for Strict Liability – Design Defect And/Or Defective Product Pursuant To A.R.S. § 12-681 (*id.*, Count I), Strict Liability – Failure to Warn Pursuant to A.R.S. § 12-681 (*id.*, Count II), Negligence (*id.*, Count III), Public Nuisance As Per A.R.S. § 13-2917 (*id.*, Count IV), Private Nuisance (*id.*, Count V), and Trespass (*id.*, Count VI).[2]

9.  Pursuant to 28 U.S.C. § 1446(d), Tyco and Chemguard are serving a copy of this Notice of Removal upon all other parties to this case, and they are filing a copy with the Clerk of the Superior Court of Pima County, Arizona.

10. By filing a Notice of Removal in this matter, Tyco and Chemguard do not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue, and Tyco and Chemguard specifically reserve the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

11. Tyco and Chemguard reserve the right to amend or supplement this Notice of Removal.

12. If any question arises as to the propriety of the removal of this action, Tyco and Chemguard request the opportunity to present a brief and oral argument in support of removal.

---

[2] Plaintiff also brings a claim for Violation of the "Uniform Fraudulent Transfer Act" against E.I. Du Pont de Nemours and Company, The Chemours Company, The Chemours Company FC, LLC, Corteva, Inc., and Du Pont de Nemours, Inc., only. (Compl., Count VII.)

## REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(a)(1)

13. Removal here is proper under 28 U.S.C. § 1442(a)(1), which provides for removal when a defendant is sued for acts undertaken at the direction of a federal officer. Removal is appropriate under this provision where the removing defendant establishes that: "(a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" *Durham*, 445 F.3d at 1251. *See Mesa v. California*, 489 U.S. 121, 124–25, 129–31, 133–35 (1989); *Goncalves by and through Goncalves v. Rady Children's Hosp. S.D.*, 865 F.3d 1237, 1244 (9th Cir. 2017).

14. Removal rights under the federal officer removal statute, 28 U.S.C. § 1442, are much broader than under the general removal statute, 28 U.S.C. § 1441. Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson Cty. v. Acker*, 527 U.S. 423, 431 (1999). This is because § 1442 protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990, 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citation omitted). This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Durham*, 445 F.3d at 1252. To the contrary, 28 U.S.C. § 1442 as a whole must be "liberally construe[d]" in favor of removal. *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016) (alterations in original, internal quotation marks omitted).

15. All requirements for removal under § 1442(a)(1) are satisfied here. *See*, *e.g.*, *Ayo v. 3M Co.*, 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (denying motion to remand and finding that federal officer removal was proper in case against Tyco, Chemguard, and

other manufacturers of AFFF). Indeed, Plaintiff's claims here are similar to those asserted in other cases that have been removed to federal court by Tyco and/or Chemguard and subsequently transferred by the Judicial Panel on Multidistrict Litigation ("JPML") to the District of South Carolina for inclusion in the *In re AFFF* MDL. For example, *State of New York v. 3M Company*, No. 2:19-cv-01022 (D.S.C.), involves allegations that the State of New York's groundwater has been contaminated with PFOS and PFOA from AFFF usage by the United States Air Force and Air National Guard at military bases in New York, purportedly resulting in public health risks. After Tyco removed the case pursuant to § 1442(a)(1), the State of New York moved to remand the case to state court. Following transfer to the *In re AFFF* MDL, Judge Richard Gergel denied the motion, holding that Tyco had satisfied all elements of the federal officer removal statute, "entitling Tyco to have removed New York's tort claims and Tyco's federal defense to federal court." *In re AFFF*, 2019 WL 2807266, at *2–3; *see also, e.g.*, *Ayo*, 2018 WL 4781145, at *6–15 (in case subsequently transferred to the MDL, denying motion to remand and finding that federal officer removal was proper in case against Tyco, Chemguard and other manufacturers of AFFF). The *In re AFFF* MDL also already includes similar claims concerning the same Air Force Base—Davis-Monthan Air Force Base—at issue in this case. After Tyco removed one such action, *City of Tucson, et al. v. 3M Co., et al.*, No 2:19-cv-00087 (D.S.C.), to federal court, the JPML transferred it to the District of South Carolina for inclusion in the MDL. Another case, *Cortaro-Marana Irrigation District, et al. v. 3M Co., et al.*, No. 2:20-cv-03117 (D.S.C.), was direct-filed in the *In re AFFF* MDL and also raises claims stemming from alleged AFFF use at Davis-Monthan Air Force Base.[3]

---

[3] Following removal, Tyco and Chemguard intend to designate this action for transfer to the MDL.

A.  **MilSpec AFFF**

16. Since the 1960s, the United States military has used AFFF that meets military specifications ("MilSpec AFFF") on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to train its personnel, put out fires, save lives, and protect property. Indeed, the United States Naval Research Laboratory developed AFFF in response to deadly, catastrophic fires aboard the aircraft carriers *USS Forrestal* in 1967 *and USS Enterprise* in 1969.[4] Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[5]

17. The manufacture and sale of MilSpec AFFF is governed by rigorous military specifications created and administered by Naval Sea Systems Command. The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times since then.[6] All MilSpec AFFF products must be qualified for listing on the applicable Qualified Products List prior to military procurement. Prior to such listing, a manufacturer's products are examined, tested, and approved to be in conformance with specification requirements.[7] The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements. After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued

---

[4] *See* Press Release 71-09r, U.S. Naval Research Lab., Navy Researchers Apply Science to Fire Fighting (Oct. 23, 2009), https://tinyurl.com/y2jq4q4w.

[5] U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), http://bit.ly/2mujJds.

[6] The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.

[7] Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

integrity of the qualification status."[8]  Naval Sea Systems Command reserves the right to perform any of the quality assurance inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements.

18.     From its inception until very recently, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants"—the class of chemical compounds that includes PFOA, PFOS, and Short-Chain PFAS—the very compounds at issue in the Complaint here.  This requirement has been in force for virtually the entire time period at issue in the Complaint.  And although in 2019 the MilSpec removed the modifier "fluorocarbon" from "surfactants," it expressly states that "the DoD intends to acquire and use AFFF with the lowest demonstrable concentrations of . . . PFOS and PFOA" "[i]n the short term."  PFOA or PFOS are unavoidably present at some concentrations in fluorocarbon surfactants, and the current MilSpec expressly contemplates that AFFF formulations will contain PFOA and PFOS (subject to recently imposed limits).  Indeed, the current MilSpec recognizes that it is not yet technically feasible for manufacturers to completely eliminate PFOA and PFOS "while still meeting all other military specification requirements."

**B.     All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied**

        **1.     The "Person" Requirement Is Satisfied**

19.     The first requirement for removal under the federal officer removal statute is satisfied here because Tyco (a limited partnership) and Chemguard (a corporation) are "persons" under the statute.  For purposes of § 1442(a)(1), the term "'person'" includes "'companies, associations, firms, [and] partnerships.'"  *Papp*, 842 F.3d at 812 (quoting 1 U.S.C. § 1); *see Lombardi v. TriWest Healthcare All. Corp.*, No. CV-08-02381-PHX-FJM, 2009 WL 1212170, at *2 (D. Ariz. May 4, 2009) ("[C]orporate entities . . . are 'persons'

---

[8] Dep't of Defense SD-6, at 1.

within the meaning of the statute."); *Isaacson*, 517 F.3d at 135–36 (holding that a non-natural entity is a "person" for purposes of § 1442(a)(1)).

### 2. The "Acting Under" Requirement Is Satisfied

20. The second requirement ("acting under" a federal officer) is satisfied when an entity assists or helps carry out, the duties or tasks of a federal officer. *Isaacson*, 517 F.3d at 137 (internal quotation marks omitted). "The words 'acting under' are to be interpreted broadly." *Id.* at 136 (citation omitted). Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813.

21. The requirement is met here because Plaintiff's claims, at least in part, challenge Tyco's and Chemguard's alleged conduct in providing vital products "that, in the absence of Defendants, the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137. MilSpec AFFF is a mission critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission critical" and "life-saving product" used by all branches of the U.S. armed forces and NATO members (internal quotation marks omitted)); *cf. Isaacson*, 517 F.3d at 137. The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations."[9] Accordingly, the military has long depended upon outside contractors like Tyco and Chemguard to develop and supply AFFF. *See Ayo*, 2018 WL 4781145, at *8–9 (holding that Tyco, Chemguard, and other AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *see also* MDL Order 1 at

---

[9] *Fulfilling the Roosevelts' Vision* at 37.

3–6 (finding that the "acting under" requirement was satisfied because Tyco demonstrated that it was manufacturing AFFF under the guidance of the U.S. military); MDL Order 2 at 3–5 (same for AFFF used at Part 139 airport); MDL Order 3 at 3–6 (same). If Tyco, Chemguard, and other manufacturers did not provide MilSpec AFFF for use at DMAFB, the government would have to manufacture and provide the product itself.

22. Plaintiff's own allegations are consistent with Tyco and Chemguard "acting under" federal officers of the Department of Defense and its agencies when designing, manufacturing, and selling MilSpec AFFF products allegedly used at Davis-Monthan AFB. The complaint alleges that Tyco, Chemguard, and other Defendants' AFFF products were "used at the Davis-Monthan Air Force Base ('DMAFB') for more than four decades in routine training and emergency activities," and that PFCs were released into the environment and groundwater due to AFFF usage at Davis-Monthan AFB as part of those activities and "through testing of the equipment, false alarms, equipment malfunctions, and other incidental releases in the hangers, fire stations and other locations." (Compl. ¶¶ 9–10.) Thus, Plaintiff attributes the alleged water contamination to AFFF usage at Davis-Monthan AFB, where MilSpec AFFF would have been used.

23. In designing, manufacturing and supplying the MilSpec AFFF products at issue, Tyco and Chemguard acted under the direction and control of one or more federal officers. Specifically, Tyco and Chemguard acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling. Further, the AFFF products in question were subject to various tests by the United States Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the United States Department of Defense.[10]

---

[10] See Dep't of Defense, SD-6, at 1.

### 3. The Causation Requirement Is Satisfied

24. The third requirement, that a defendant's actions were taken "under color of federal office . . . has come to be known as the causation requirement." *Isaacson*, 517 F.3d at 137 (alteration, citation, and internal quotation marks omitted). Like the "acting under" requirement, "[t]he hurdle erected by this requirement is quite low." *Id.* Courts "credit Defendants' theory of the case when determining whether [this] causal connection exists." *Id.*[11]

25. "To show causation, Defendants must only establish that the act that is the subject of Plaintiffs' attack … occurred *while* Defendants were performing their official duties." *Id.* at 137–38; *Papp*, 842 F.3d at 813 (explaining that in order to meet the causation requirement, it is "sufficient for there to be a connection or association between the act in question and the federal office").

26. Here, Plaintiff's claims arise at least in part from Tyco's and Chemguard's production and sale of AFFF manufactured to military specifications for use at military bases. Plaintiff alleges that the use of PFOA and PFOS in AFFF rendered those products defective. Tyco and Chemguard contend that the use of such chemicals in MilSpec AFFF was required by military specifications. The conflict is apparent: MilSpec AFFF was developed by Tyco, Chemguard, and other manufacturers to meet specifications established by the Department of Defense. Military installations are required to employ MilSpec AFFF. The design choices Plaintiff is attempting to impose via state tort law would create a conflict in which Tyco and Chemguard could not comply with both the MilSpec and the purported state-prescribed duty of care. *See Boyle v. United Techs. Corp.*, 487 U.S. 500, 509 (1988); *see also Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'casual connection'

---

[11] The "acting under" and "under color of" prongs overlap. Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990, 2011 WL 5109532, at *5 (S.D.N.Y. Oct. 21, 2011).

between the use of PFCs in AFFF and the design and manufacture of AFFF for the government."); *accord In re AFFF*, 2019 WL 2807266, at *3.

27. Although Plaintiff alleges that Defendants "elected to include PFOA and/or PFOS and/or other PECs in their AFF formulations" when there was "no requirement to do so," and that Defendants were "aware and/or in the possession, of an available safer design [for AFFF] that was functional and reasonably priced," (Compl. ¶¶ 8, 138), that is both incorrect and immaterial. Plaintiff cannot defeat federal-officer removal based on allegations directly at odds with the MilSpec and the judgment of the federal officers who administer it. Further, "even if Plaintiff were to prove that the [alleged] contamination occurred because of an act not specifically contemplated by the government contract, it is enough that the contracts gave rise to the contamination." *Isaacson*, 517 F.3d at 138. "[W]hether the challenged act was outside the scope of Defendants' official duties, or whether it was specifically directed by the federal Government, is one for the federal—not state—courts to answer." *Id.*

### 4. The "Colorable Federal Defense" Requirement Is Satisfied

28. The fourth requirement ("colorable federal defense") is satisfied by Tyco's and Chemguard's assertion of the government contractor defense. The Ninth Circuit has recognized that this defense supports removal under § 1442(a)(1). *See Leite v. Crane Co.*, 749 F.3d 1117, 1124 (9th Cir. 2014).

29. At the removal stage, a defendant need only show that its government contractor defense is "colorable." *Leite*, 749 F.3d at 1124 (quoting *Jefferson Cty.*, 527 U.S. at 407). "To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." *Isaacson*, 517 F.3d at 139 (citation omitted). At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional

issue." *Cuomo v. Crane Co.*, 771 F.3d 113, 116 (2d Cir. 2014) (quoting *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 644 n. 12 (2006)).[12]  Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010).  "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (alteration in original) (citation omitted).

30. Under the government contractor defense, the defendant is not liable for alleged defects or negligence with respect to military equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

31. Tyco and Chemguard have satisfied these elements for purposes of removal.  As discussed above, Naval Sea Systems Command approved reasonably precise specifications, governing MilSpec AFFF formulation, performance, testing, storage, inspection, packaging, and labeling.  Tyco's and Chemguard's products appeared on the DOD Qualified Products List, which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec.  *See Ayo*, 2018 WL 4781145, at *13 ("[T]here is colorable evidence that Manufacturing Defendants' Mil-Spec AFFF is not a stock product and that the government approved reasonably precise specifications requiring them to use PFCs, including PFOS and PFOA, in their products.");

---

[12] *See also Kraus v. Alcatel-Lucent*, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage. Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense.").

*see also id.* ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); MDL Order 1 at 5 (finding Tyco demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications"); MDL Order 2 at 4 (same, as to Tyco/Chemguard); MDL Order 3 at 5 (same, as to Tyco/Chemguard).

32. Moreover, the government was adequately informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF. The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand. Indeed, it is clear that the United States has long understood that AFFF contain PFAS and may contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate through the soil and potentially reach groundwater; and that it has been reported that this may raise environmental or health issues.[13] For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from fire fighting exercises are considered to have adverse effects environmentally."[14] More recently, in a November 2017 report to Congress, the Department of Defense acknowledged the concerns raised by the EPA regarding PFOS and PFOA . Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and

---

[13] *See, e.g.*, EPA, Revised Draft Hazard Assessment of Perfluorooctanoic Acid and its Salts, at 1–6 (Nov. 4, 2002) (excerpt).

[14] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), http://www.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

protects assets by quickly extinguishing petroleum-based fires."[15]  Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants," and recognizes that PFAS, including PFOS and PFOA, will be present (subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[16] *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design."); MDL Order 1 at 5 ("As to whether Tyco adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, Tyco points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . .").

33.  At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks. *See Twinam v. Dow Chem. Co. (In re "Agent Orange" Prod. Liab. Litig.)*, 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990, 2011 WL 5109532, at *5 (S.D.N.Y. Oct. 21, 2011) ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)).  Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at *13.

---

[15] Dep't of Defense, Aqueous Film Forming Foam Report to Congress 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/y5un3zq8.
[16] *Id.* § 6.6 & Tables 1, 3.

# IN THE ALTERNATIVE, REMOVAL IS PROPER BASED ON DIVERSITY JURISDICTION

34. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332. Diversity jurisdiction exists where (1) the amount in controversy exceeds $75,000, exclusive of interest and costs, and (2) the suit is between citizens of different states. *See, e.g.*, *Burk v. Med. Sav. Ins. Co.*, 348 F. Supp. 2d 1063, 1066–67 (D. Ariz. 2004).

35. There is complete diversity of citizenship in this action. The Complaint alleges that Plaintiff is a political subdivision of the State of Arizona. (Compl. ¶ 17). Thus, Plaintiff is a citizen of Arizona. *See Illinois v. City of Milwaukee, Wis.*, 92 S. Ct. 1385, 1390 (1972). The Complaint does not allege that any Defendant is a citizen of Arizona (*see* Compl. ¶¶ 31–62), and on information and belief, no Defendant is either incorporated in or has its principal place of business in Arizona. Because Plaintiff is a citizen of Arizona, and no defendant is a citizen of Arizona, complete diversity exists among the parties to this action.

36. The amount in controversy requirement is also satisfied. The amount in controversy in a case where federal jurisdiction is based on diversity of citizenship must exceed $75,000, exclusive of interest and costs. 28 U.S.C. § 1332. As the Supreme Court has made clear, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., llc v. Owens*, 135 S. Ct. 547, 554 (2014). While Tyco and Chemguard deny that Plaintiff is entitled to any monetary or other relief, the amount in controversy here is plainly in excess of the jurisdictional minimum. Although Plaintiff does not specific a precise dollar amount in controversy, the allegations in the Complaint confirm that the damages sought—which will purportedly be incurred over the next century—exceed $75,000. Plaintiff seeks "damages incurred and to be incurred for the investigation, monitoring, remediation, treatment and other necessary responses" to the alleged PFAS

contamination. (Compl. ¶ 16). Plaintiff alleges that it "will incur substantial expenses in treating the contaminated water and installing the infrastructure modifications necessary to ensure each residential and commercial property is served clean and safe water," and that it "will also incur future sampling costs for PFOS and PFOA and other PFCs for the next one hundred (100) years." (*Id.* ¶¶ 28, 29).

37. In the alternative, because both the complete diversity and amount in controversy requirements are satisfied, this action is removable to federal court under 28 U.S.C. § 1332.

WHEREFORE, Tyco and Chemguard hereby remove this action from Superior Court of the State of Arizona, County of Maricopa, to this Court.

RESPECTFULLY submitted this 15th day of October, 2020.

By:   /s/ Lukas M. Landolt
Eric B. Johnson
Lukas M. Landolt
Quarles & Brady, LLP
Renaissance One
Two North Central Avenue
Phoenix, AZ 85004-2391

*Counsel for Tyco Fire Products, LP & Chemguard, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and delivered a copy of the foregoing via United States Mail to the following:

| | |
|---|---|
| Joel L. Herz<br>Law Offices of Joel L. Herz<br>La Paloma Corporate Center<br>3573 E. Sunrise Dr., Suite 215<br>Tucson, AZ 85718-3206<br><br>*Counsel for Plaintiff*<br><br>3M Co.<br>3M Center<br>Saint Paul, MN 55144<br><br>Buckeye Fire Equipment Company<br>110 Kings Road<br>Mountain, NC 28086<br><br>National Foam, Inc.<br>144 Junny Road<br>Angier, NC 27501 | E.I. DuPont De Nemours & Company<br>974 Centre Road<br>Wilmington, DE 19805<br><br>The Chemours Company<br>1007 Market Street<br>Wilmington, DE 19899<br><br>The Chemours Company FC, LLC<br>1007 Market Street<br>Wilmington, DE 19899<br><br>Dynax Corporation<br>103 Fairview Park Drive<br>Elmsford, NY 10523<br><br>Corteva, Inc.<br>974 Centre Road<br>Wilmington, DE 19805<br><br>Du Pont De Nemours Inc.<br>1999 Bryan Street, Suite 900<br>Dallas, TX 75201<br><br>*Defendants* |

*/s/ Maria Marotta*